CASE 12.—PROCEEDING BY THE COUNTY ATTORNEY OF JEFFERSON COUNTY IN THE NAME OF THE COMMONWEALTH AGAINST ARMILDA U. BOOTH'S EXECUTOR TO COLLECT AN INHERITANCE TAX.— October 27.

## Booth's Exr. v. Commonwealth, ex rel Jefferson County Atty.

Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

SAMUEL R. KIRBY, Judge.

From a judgment of the Circuit Court affirming a judgment of the County Court the executor appeals. —Affirmed.

1.  Taxation—Inheritance Tax—Power to Impose.—The power to tax is incident to the legislative power so that it is necessary, not that the Constitution have a provision authorizing

Booth's Exr. v. Commonwealth ex rel. Jefferson County Atty.

the imposition of an inheritance tax, but that it does not prohibit it.

2. Taxation—Inheritance Tax—Power to Impose.—The right to take property by inheritance or bequest is but a creature of the law, and not an absolute right of property, and hence it may be regulated by the State and subjected to a tax as an incident of such regulation.

3. Taxation—Uniformity—Inheritance Tax—"Tax on Property.— An inheritance tax is not a "tax on property," within Constitution section 171, requiring uniformity and equality of taxes on all property subject to taxation.

4. Taaxtion—Inheritance Tax—Uniformity.—Even if the inheritance tax be a "special or excise" tax, authorized by Constitution section 181, and the rule as to uniformity of taxation applies to a special or excise tax, Revenue Act, 1906 (Acts 1906, p. 240, c. 22) art. 19, section 1, imposing a collateral inheritance tax of $5 on every $100 of every legacy of the class taxed in excess of $500 to the extent of the excess, satisfied the rule as to uniformity.

5. Taxation—Inheritance Tax—Exemption—"Estate."—The "estate" meant by the provision of Revenue Act, 1906 (Acts 1906, p. 240, c. 22), art. 19, section 1, that the first $500 of every estate shall not be subject to the tax thereby imposed on legacies to strangers and collateral heirs and inheritances by collateral heirs, is not the estate of deceased, but that passing to a stranger of collateral heir, so that each legacy is entitled to the exemption; and this, though the executor or administrator is required to pay it in the first instance, he being also required to deduct it from the estate passing to the legatee or collateral heir.

6. Constitutional Law—"Legislative Power"—Nature and Scope. —The words "legislative power," used in Constitution, section 29, providing that the legislative power shall be vested in a House of Representatives, etc. is a comprehensive phrase, meaning all powers that appertain to or are usually exercised by a legislative body.

7. Words and Phrases—"Excise."—The word "excise" is a term of very general significance, and means tribute, custom tax, tollage, or assessment.

ON REHEARING—

Equity—Exclusive and Concurrent Jurisdiction—Collateral Inheritance Tax—Assessment by Court of Equity.—While Acts, 1906, pp. 246, 247, c. 22, sections 13, 14, 15, part of the act

imposing a collateral inheritance tax, give the county court jurisdiction to determine questions arising relative to the tax this jurisdiction is not exclusive, and a court of equity may, at the instance of the Commonwealth's representative, require the payment of such tax out of the shares of those chargeable therewith before distributing an estate.

GEO. L. EVERBACH and ISAAC T. WOODSON for appellant.

## LEGAL PROPOSITIONS.

1. The present income tax law is a tax upon the estate, and is an unequal and discriminative tax, in violation of the Bill of Rights and sections 170 and 171 of the State Constitution. (Bill of Rights, sections 1 and 26, and sub-sections 2 and 3 of section 7 of State Constitution; in re Cope's estate, 43 Atl. Rep. 79 (Penn. Sup. Ct.); Constitution of Pennsylvania, section 1.)

2. Even if it is also a tax upon a privilege it is likewise unconstitutional. (Constitution of California, cited in People v. McCreary, 34 Cal. 432; Cooley's Const. Limitations, 718, 743, 747 749; State v. Indianapolis, 69 Ind. 375; Huse v. Marion, 2 Me. 375; Knowlton v. Board of Supervisors, 9 Wis. 410; State v. Ferris, 41 N. E. 578-9; Ohio Const., section 2 of Bill of Rights.)

3. "But when all the legitimate lights for ascertaining the meaning of the Constitution have been made use of, it may still happen that the construction remains a matter of doubt. In such a case it seems clear that every one called upon to act where, in his opinion, the proposed action would be of doubtful constitutionality is bound upon the doubt alone to abstain from acting. * * * A doubt of the constitutionality of any proposed legislative enactment should in any case be reason sufficient for refusing to adopt it." (Cooley's Const. Limitations, section 73, pp 88 and 89; Am. Net. & Twine Co. v. Worthington 141 U. S. 468.)

JOSEPH SELLIGMAN for appellee.

JAMES BREATHITT, Attorney General; JOHN F LOCKETT, Assistant Attorney General; GEO. R. HUNT, County Attorney of Fayette County, of counsel.

1. The imposition of taxes is a legislative function. Its exercise is restricted in many of the United States by certain constitutional limitations, but insofar as it is not thus restricted, the Legislature's power to impose taxes is absolute.

2. The right to take property by inheritance is not a natural or

Booth's Exr. v. Commonwealth ex rel. Jefferson County Atty.

inherent right of persons, but is a creature of the law. As such it is peculiarly subject to regulation by statute, and the imposition of a tax as incident to the right is authorized under our governmental system, when not expressly forbidden by our Constitution.

3. The restrictions upon the powers of taxation of the Kentucky Legislature imposed by our State Constitution do not forbid the imposition of an inheritance tax or the granting of exemptions from such a tax. Though no express authority for the imposition of any tax is requisite, the inheritance tax in the Revenue Act of 1906 is one expressly authorized by our Constitution.

4. Courts will not declare statutes unconstitutional merely because they may happen not to accord with the views of the judges as to the wisdom of such legislation, nor because they violate, in the views of the judges, some spirit which is supposed to pervade our institutions. Acts of the Legislature will be held unconstitutional only when violative of some express provision of the Constitution.

TRABUE, DOOLAN & COX for appellant.

GRUBBS & GRUBBS CHAS. M. LINDSAY, PERCY N. BOOTH, ISAAC T. WOODSON and GEO. L. EVERBACH of counsel.

POINTS AND AUTHORITIES.

1. The statute assailed is simply an opening wedge to dangerous and extensive legislation.

(a) Illegitimate "and unconstitutional practices get their first footing" "by silent approaches and slight deviations from legal modes of procedure." "It is the duty of courts to be watchful," etc., "against any stealthy encroachments thereon. Their motto should be 'obsta principiis.'" (116 U. S. 635.)

(b) The power to tax is the power to destroy, and "oppressive exactions" are "generally made under the guise of taxation."

2. The statute provides essentially taxation of property, and offends Constitution sections 170, 171, 172, 174, although called by appellee's counsel a tax upon privilege. (State v. Switzler, 143 Mo. 287; State v. Ferriss, 53. Ohio St. 325; Estate of Cope, 191 Pa. St., etc.)

(a) The tax differs from indirect taxes like those on incomes, licenses, franchises etc., in being nothing more nor less than an exact ad valorem tax upon a specified, or "appraised," amount of property. When the language is plain, the statute can not be remodeled to prevent its being declared unconstitutional. (Rogers,

Booth's Exr. v. Commonwealth ex rel. Jefferson County Atty.

etc., Co. v. Murray, 115 Wis. 267, 91 N. W. Rep. 657; Employers' Liability Cases, 207 U. S. 463, 501, and cases cited; James v. Bowman, 190 U. S. 127.)

(b) Were the law otherwise, a court need not declare any statute constitutional, but might so amend it as to make it unobjectionable.

3. The tax is not an "excise tax." (Bouvier, "excise;" 11 Am. & Eng. Ency., p. 579; 1 Cooley, Tax., p. 6 (3rd Ed.), etc.)

(a) But whatever the tax, the taxes provided for by section 181 Constitution must possess the requisite uniformity, and be free from exemptions unauthorized by section 170. (Hager v. Walker, 107 S. W. 254; Holthauer v. Newport, 94 Ky. 407; Estate of Cope, 191 Pa. St. 1, 45 L. R. A. 319)

(b) Uniformity may be affected, or destroyed, by manipulating an exemption, as well as by manipulating the rate of taxation. Discrimination between rich and poor, or selection of one or the other at legislative pleasure, is unconstitutional in Kentucky. (Sams v. Sams, 85 Ky. 396; Commonwealth v. Reynolds, 89 Ky. 147, etc.)

(c) The unconstitutionality of the inheritance tax statutes which have been condemned has usually arisen from a blind adoption of the New York statute without attending to the difference between New York's Constitution and the Constitution of the imitative State aping New York ways. (Drew v. Tifft, 79 Minn. 175, 81 N. W. Rep. 839.)

4. The right of succession is but an incident, or feature, of the right of property, and is "inherent and inalianable," and not a right dependent upon legislative fiat. (Black v. State, 113 Wis. 205, 216, 218, 224, 228; 89 N. W. Rep. 526; and Nunemacher v. State, 129 Wis. 190, 108 N. W. Rep. 627, 628.)

(a) The inherent right of succession is recognized in the Federal Constitution, and Kentucky Constitution in the Attainder clauses forbidding corruption of blood, and forfeiture beyond offender's lifetime. (Federal Const., art. 3, section 3, sub-section 2; Ky. Const., section 20.)

5. The method of appraisement so radically differs from the ordinary method of assessment as to offend article 14, Federal Constitution. (Raymond v. Chicago U. T. Co., 207 U. S. 20, 36.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Mrs. Armilda U. Booth, a childless widow and resident of Jefferson county, Ky., died in December, 1906,

leaving a will by which legacies of various amounts were bequeathed to her collateral kindred and to strangers. The executor appointed by the will on December 24, 1906, duly qualified as such and has since had charge of the estate. Shortly thereafter, and before the payment of any of the legacies bequeathed by the will, the Commonwealth of Kentucky, on relation of the county attorney of Jefferson. county, filed in the Jefferson county court a statement against the executor of the will of Mrs. Booth, claiming for the Commonwealth an inheritance tax of 5 per cent upon the face value of each legacy in excess of $500 bequeathed by her will; the demand for its payment being based upon the provisions of article 19 of the revenue act of 1906 (Acts, 1906, p. 240, c. 22). The executor filed a demurrer to the statement mainly upon the ground that the act was unconstitutional; but in argument upon the demurrer certain questions of construction were also raised. The county court overruled the demurrer, thereby upholding the constitutionality of the act, but construed it to impose a tax of 5 per cent upon the net value of each legacy passing to each legatee over the sum of $500.

An appeal was taken to the circuit court by both the executor and the Commonwealth, and that court, concurring in the construction given the statute by the county court, entered judgment imposing the tax as that court had done; and from the latter judgment the executor has appealed, thereby bringing the case to this court for final adjudication. The questions upon which the decision of this court is asked are: First, does the act in question violate any provision of the State Constitution? Secondly, if the act is not unconstitutional, does the exemption in the first section refer to the entire estate of the decedent, or to

each legacy? Thirdly, is the tax upon the net amount actually received by each legatee or upon the face of his legacy?.

The first section of the act in question imposes the tax and specifies its objects. The remaining sections indicate the means by which the provisions of the first section are to be carried into effect. The first section reads as follows: "All property which shall pass, by will or by the intestate laws of this State, from any person who may die seized or possessed of the same while a resident of this State, or if such decedent was not a resident of this State at the time of death, be within this State, or any interest therein, or income therefrom, which shall be transferred by deed, grant, sale, or gift, made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death, to any person or persons, or to any body politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled, in possession or expectancy, to any property, or to the income thereof, other than to or for the use of his or her father, mother, husband, wife, lawful issue, the wife or widow of a son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the Commonwealth of Kentucky, and any lineal descendant of such decedent born in lawful wedlock, shall be, and is, subject to a tax of five dollars on every one hundred dollars of the fair cash value of such property, and at a proportionate rate for any less amount, to be paid to the sheriff or collector of the proper county, as hereinafter defined for the general use of the Commonwealth; and all administrators, executors and trustees shall be liable

for any and all taxes until the same shall have been paid as hereinafter-directed: Provided, That the first five hundred dollars of every estate shall not be subject to such duty or tax." Counsel for appellant insist that the act is violative of the State Constitution, because of the alleged absence from that instrument of a provision authorizing the imposition of an inheritance tax; that the act is in conflict with that provision of the Constitution which requires that all taxes shall be uniform; and, finally, that its operation will result in discrimination, as well as inequality, which, it is claimed, makes it obnoxious to the provisions of the fourteenth amendment of the Constitution of the United States.

The present Constitution of the State declares that the Legislature may by general laws provide (1) for the levy and collection, for State, county, and municipal purposes, of an annual ad valorem tax on all property (sections 171, 172); (2) a tax on incomes, licenses, or franchises (section 174); (3) license fees on franchises, stock used for breeding purposes, the various trades, occupations, and professions; and (4) "a special or excise tax |section 181). It may also be remarked that section 171 of the Constitution declares that: "Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws."

But, after all, the power of the Legislature to tax is an inherent, rather than a conferred, power, although the legislative department of our State government, like the executive department and judicial department, is a creature of the Constitution. Thus,

in section 29 of that instrument, it is said: "The legislative power shall be vested in a House of Representatives and a Senate, which together shall be styled the General Assembly of the Commonwealth of Kentucky." The words "the legislative power," as here employed, are a comprehensive phrase, meaning all powers that appertain to or are usually exercised by a legislative body. Perhaps it would more accurately express our meaning to say that the power to tax is incident to, or arises from, the "legislative power" with which section 29 of the Constitution clothed the General Assembly in creating that department of the State government. It can not, therefore, be successfully maintained that the authority of the Legislature to impose taxes is wholly derived from sections 169 to 182, inclusive, of the Constitution, which relates to revenue and taxation. On the contrary, we think the provisions of those sections are, in the main, limitations upon the power of the Legislature, making mandatory the imposition of certain taxes and forbidding or regulating the imposition of others.

We are told by Mr. Cooley, in his work on Taxation (chapter 1), that: "The power of taxation is an incident of sovereignty, and is possessed by the government without being expressly conferred by the people. It is a legislative power, and when the people, by their Constitution, create a department of government upon which they confer the power to make laws, the power of taxation is conferred as part of the more general power. * * * Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise, or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the

authority extends from the grasp of the taxing power, if the Legislature in its discretion shall at any time select it for revenue purposes; and not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried even to the extent of exhaustion and destruction, thus becoming in its exercise a power to destroy. If the power be threatened with abuse, security must be found in the responsibility of the Legislature that imposes the tax to the constituency which must pay it. The judiciary can afford no redress against oppressive taxation, so long as the Legislature, in imposing it, violate no express provision of the Constitution. The necessity for imposing it addresses itself to the legislative discretion, and it is or may be an urgent necessity, which will admit of no property or other conflicting right in the citizen while it remains unsatisfied.'' Cooley on Taxation, cc. 1 2.

We fail to find in that part of our Constitution respecting revenue and taxation any declaration that the power of the Legislature to impose taxes is expressly limited to such taxes as are therein mentioned. We do, however, find that section 181, in explicit terms, authorizes the imposition of a ''special or excise tax;'' but the Legislature, without this express authority, could have imposed such a tax under the general legislative power before mentioned; there being no provision of the Constitution forbidding it. State v. Ferris, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218; State v. Guilbert, 70 Ohio St. 229, 71 N. E. 636. As the privilege or right to take property by inheritance or devise is not a natural or inherent right of persons, but is a creature of the law, it is subject to regulation by statute; and the imposition of a tax as incident to the right is authorized under our gov-

ernmental system, when not expressly forbidden by
the State Constitution.  Many authorities might be
cited in support of this proposition, and our attention
has been called to but one case that questions its cor-
rectness, viz., Nunnemacher v. State, 129 Wis. 190,
108 N. W. 627, 9 L. R. A. (N. S.) 121.  Yet in that
case the tax upon an inheritance was held to be valid
upon the sole ground that it could not be considered
an unreasonable interference with that right.    The
right of property, however, is an inherent or inalien-
able right of the citizen, and "consists in the free
use, enjoyment, and disposal of his acquisitions, with-
out control or diminution, save only of the laws
of the land."   Blackstone's Com. vol. 1, p. 138.  But
we venture to say that among the absolute rights of
individuals enumerated by Blackstone no mention is
made of a right to inherit property from another.  All
estates derived upon the death of another have been
created by law, and are for that reason always subject
to regulation by statute; indeed, frequent changes by
legislative enactment have been and will doubtless yet
be made in the law of descent and distribution.   It is
patent. therefore, that the guaranty in the Bill of
Rights, and other provisions of the Constitution, with
respect to the right of acquiring and protecting prop-
erty, does not include the mere privilege, right, or
expectancy of inheritance.

While  express  constitutional  authority  for  the
enactment by the Legislature of the act under which
the tax in question is sought to be collected was unnec-
essary, if the tax comes within the meaning of the
words "special or excise tax" appearing in section
181 of the Constitution, it may then be said that
instrument expressly authorized its imposition by the
Legislature.  Although the State of Kentucky has had

an existence of more than a century as a Commonwealth, no effort, prior to the enactment of the present statute, has ever been made by her Legislature to impose an inheritance tax upon her people. Therefore the novelty of the questions raised by the objections made to the statute and the total absence of judicial light from previous decisions of this court compel us to look for guidance to those of the courts of other States, and of the Federal courts, in which such laws have been construed and enforced. Perhaps a majority of the States of the Union impose an inheritance tax in one form or another. In some of these States the tax falls upon all persons, whether lineal descendants, collaterals, or strangers. In other States the tax is paid by collaterals alone, or by collaterals and strangers; the latter, of course, taking the estate by devise. In some States the tax rate is uniform; in others estates of less than a given value are exempt from the tax; in still others the tax is imposed according to a graded rate, without regard to uniformity. We have been cited to no case in which there was a failure by the court to uphold an inheritance tax like that imposed in this State. The Constitutions of many of the States in which an inheritance tax is imposed are, in respect to questions of taxation, in meaning, if not in terms, closely akin to the Constitution of this State, and even a closer resemblance will be found to exist between the inheritance tax statutes of these States and that of this State; indeed, two or more of them are almost identical with ours, that the inheritance tax shall be paid by the persons or class designated upon all property passing to them by will or otherwise, and in every instance the courts, in construing the statutes, have held that the

tax was not a tax upon property, but a "privilege,"
"special," or "excise tax."                            ,

In State v. Hamlin, 86 Me. 495, 30 Atl. 76, 25 L. R.
A. 632, 41 Am. St. Rep. 569, a statute practically
identical with that of this State, was attacked upon
the same constitutional grounds here urged; but it.
was held by the Supreme Court of that State that it
did not violate a provision of the Constiution of that
State, which required all taxes assessed upon personal
and real estate to be apportioned and assessed equally
according to the just value thereof.   With respect to
the character of the Maine inheritance tax the court
said: "The tax provided for in the statute under con-
sideration is clearly an excise tax.   Scholey v. Rew,
23 Wall. 346, 23 L. Ed. 90.   The whole tenor and scope
of the act is one of excise, and not a 'tax upon prop-
erty,' as that term is used in the Constitution.   It is
not laid according to any rule of proportion, but is
laid upon the interests specified in the act, without
any reference to the whole amount required to be
raised for public purposes.   It is true that the act
contains some language indicating a tax upon prop-
erty; but it should be construed according to its essen-
tial principle, object, and effect.   Substance, and not
form or phrase, is the important thing.   *   *   *   The
tax under this statute is, once for all, an excise or
duty upon the right or privilege of taking property
by will or by descent under the law of the State.   It
is uniform in its rate as to the entire class of collat-
erals and strangers, which satisfies the constitutional
requirement of uniformity.   The Constitution guar-
antees to the citizen the right of acquiring, possess-
ing, and protecting property (article 1, section 1),
which includes also the right of disposal.   But the
guaranty ceases to operate at the death of the pos-

sessor. There is no provision of our Constitution, or that of the United States, which secures the right to any one to contract or dispose of his property after his death, nor the right to any one, whether kindred of not, to take it by inheritance. Descent is a creature of statute, and not a natural right. 2 Blk. Co. 10, 11; Strode v. Com., 52 Pa. 181.''

In Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, the constitutionality of the Illinois statute, which is worded precisely as the Kentucky statute, was upheld. In that case substantially every objection was made to the statute that is urged in the instant case; but, after an exhaustive consideration of these objections and a critical review of the decisions of various State courts, the Supreme Court announced the following conclusions: First: ''An inheritance tax is not one on property by devise or descent. It is the creature of the law, and not a natural right or privilege; and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the States may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions, and are not precluded from this power by the provisions of the respective State Constitutions requiring uniformity and equality of taxation.''

The conclusions expressed in Magoun v. Illinois Trust & Savings Bank and State v. Hamlin, supra, are approved by the following cases: United States v. Perkins, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287; Strode v. Commonwealth, 52 Pa. 181; Eyre v. Jacob, 14 Grat. (Va.) ( 422, 73 Am. Dec. 367; Schoolfield v. Lynchburg, 78 Va. 368; State v. Dalrymple, 70 Md. 298, 17 Atl. 82, 3 L. R. A. 372; Clapp v. Mason,

94 U. S. 589, 24 L. Ed. 212; re Merriam's Estate, 141
N. Y. 479, 36 N. E. 505; State v. Alston, 94 Tenn. 674,
30 S. W. 750, 28 L. R. A. 178; re Wilmerding, 117
Cal. 281, 49 Pac. 181; Minot v. Winthrop, 162 Mass.
113, 38 N. E. 512, 26 L. R. A. 259; Gelsthrope v. Fur-
nell, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170;
Scholey v. Rew, 90 U. S. 331, 23 L. Ed. 99; Mager v.
Grima, 8 How. 490, 12 L. Ed. 1168; United States v.
Fox, 94 U. S. 315, 24 L. Ed. 192; Plummer v. Coler,
178 U. S. 117, 20 Sup. Ct. 829, 44 I. Ed. 998; Knowlton
v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969;
State ex rel. Garth v. Switzler, 143 Mo. 287, 45 S. W.
245, 40 L. R. A. 288, 65 Am. St. Rep. 653; 27 Am. &
Eng. Ency. of Law, 337. We think the numerous
authorities, supra, answer every substantial objection
made to the inheritance tax statute under considera-
tion. For they clearly present the theory on which
taxation on the devolution of estates at the death of
their owners is based, and thereby uphold the validity
of the statute, by demonstrating that the tax thereby
imposed is not one on property, but one on the privi-
lege or right of succession thereto, and that it is not
obnoxious to any provision of the State or Federal
Constitutions requiring uniformity or equality of
taxation, or because its enforcement may result in
discrimination between relations, or between rela-
tions and strangers.

It is, however, insisted for appellant that as the tax
is a certain percentum of the value of the estate, and
the property pays it, it is therefore a tax on the prop-
erty itself. This argument is answered by the opinion
in Eyre v. Jacob, supra, as follows: "But this is by
no means a necessary logical conclusion. The inten-
tion of the Legislature was plainly to tax the trans-

mission of property by devise or descent to collateral kindred, and to require that a party then taking the benefit of a civil right accrued to him under the law should pay a certain premium for its enjoyment; and, as it was thought just and reasonable that the amount of the premiums should bear a certain proportion to the value of the subject enjoyed, it is fixed at a certain percentum upon the value of the whole estate transmitted." The provisions with respect to equality and uniformity in taxation found in section 171 of the Constitution apply to a direct tax on property. They do not limit the power of the Legislature as to the objects of taxation, but are more especially intended to prevent an arbitrary taxation of property according to kind or quality, without regard to value. We are, however, unable to see that the inequality and want of uniformity complained of by appellant exist in the statute under consideration, for every person not of the class exempted by the act from the payment of the tax, who takes from the estate of a decedent by succession or devise, pays a tax for the privilege, and this tax is proportioned to the value of the interest which he acquires. Nor does the exemption, where the estate is of the value of $500 or less, constitute inequality or unjust discrimination. Magound v. Illinois Trust & Savings Bank, 178 U. S. 288, 18 Sup. Ct. 594, 42 L. Ed. 1037; Eyre v. Jacob, 14 Grat. (Va.) 422, 73 Am. Dec. 375.

In Minot v. Winthrop, 162 Mass. 113, 38 N. E. 512, 26 L. R. A. 264, it is said in reference to a complaint of inequality urged against an inheritance tax statute: "The tax imposed by the statute we are considering is said to be unequal because it is not imposed upon all estate and upon all heirs, devisees, legatees, and distributees. To make a distinction between collat-

eral kindred or strangers in blood and kindred in the direct line in reference to the assessment of such a tax, either by exempting the kindred in the direct line or by imposing on collaterals and strangers a higher rate of taxation, has the sanction of nearly all States which have levied taxes of this kind. It has a sanction in reason, for the moral claim of collaterals and strangers is less than that of kindred in the direct line, and the privileges therefore greater. The tax imposed by this statute is uniformly imposed upon all estates and all persons within the description contained in it, and the tax is not plainly and grossly oppressive in amount.'' In State v. Hamlin, 86 Me. 495, 30 Atl. 76, 25 L. R. A. 632, 41 Am. St. Rep. 569, it is said: ''The constitutional requirement of uniformity is satisfied by a tax on the transmission of property by will or descent to strangers and collaterals, where it is uniform as to the entire class affected, although other classes of persons are exempt from the tax.'' So, if the rule as to uniformity should be applied to the statute under consideration, we should say that it conforms to the rule; for it only requires the same means and methods to be applied impartially to all the constituents of a class, to the end that the law shall operate equally and uniformly upon all persons in similar circumstances, both in the privilege conferred and the liabilities imposed. In other words, the tax is uniform on what it is laid—the value of the succession, after deducting the exemption on which no tax is laid. It is upon so much of the legacy received as exceeds $500. No legacy of $500 or less is taxed at all, and each legacy over $500 is taxed equally as to the excess.

It is insisted for appellee that, as the inheritance tax in question is a ''special or excise tax,'' the rule

as to uniformity does not apply to it. On the other hand, appellant contends that the tax is not an "excise tax," in the meaning of that term as defined by Phlen on Public Finance and other text-writers. While it is true that "excise" has been defined to be an inland duty or impost levied upon articles of manufacture or sale, and also upon licenses to pursue certain trades or to deal in certain commodities, it is nevertheless a term of very general signification, meaning tribute, custom tax, tollage, or assessment, and in recent years the courts have so enlarged its meaning as to declare that an inheritance tax is an excise tax; indeed, it is so denominated in practically every case included in the list previously cited. While not more conclusive than similar statements in many of these cases, the following excerpt from State ex rel. Garth v. Switzler, 143 Mo. 287, 45 S. W. 245, 40 L. R. A. 288, 65 Am. St. Rep. 653, aptly supports the proposition last stated: "As already remarked, no doubt longer exists that it is competent for the Legislature to levy a tax upon the succession of estates. It is quite universally held that such a tax is not a tax upon property, in the ordinary sense, but is in the nature of an excise or bonus, exacted by the State upon the privilege or right to inherit or succeed to an estate." But, in view of our conclusion that the act imposing the tax does not violate the provisions of the Constitution with respect to uniformity of taxation, it is not necessary to decide whether or not the rule as to uniformity applies to a special or excise tax such as this. Therefore that question is not decided.

It is further contended by appellant that the effect of the act is to tax property otherwise exempt from taxation; and as an instance in point it is said that in a companion case submitted with this, a religious

institution of learning receiving a devise is sought to be taxed thereon, although its property is by law exempt from taxation. The answer to this complaint must be a restatement of the proposition that the tax is not imposed upon the property, but on the right of succession. Bonds of the United States are by act of Congress exempt from taxation; but in the cases of Plummer v. Coler, 178 U. S. 115, 20 Sup. Ct. 829, 44 L. Ed. 998, and Wallace v. Myers (C. C.), 38 Fed. 184, 4 L. R. A. 171  a State inheritance tax upon legacies of such bonds was sustained upon the principle above stated.

We think the county and circuit courts gave correct answers to the questions of construction raised by appellants. Manifestly the provision of the act declaring "that the first five hundred dollars of every estate shall not be subject to such duty or tax" refers to the estate passing by will to the collateral relative or stranger, or under the statute of descent and distribution to the collateral relative, and not to the estate of the testator or decedent, or, in other words, that an estate passing by will to the collateral or stranger, or under the statute to the collateral, which is valued at $500 or less, shall not be subject to the tax. The tax is upon the individual, and can be imposed only when the particular interest in the decedent's estate passing to him exceeds $500. The tax is not, therefore, imposed on the estate of the decedent, but upon the beneficiaries' right of succession to his property. Nor does the fact that the executor or administrator is required by the act to pay the tax make it a tax against the estate of the testator or decedent, for it also requires him to deduct it from the estate passing to the legatee or collateral heir. In re Hoffman, 143 N. Y. 327, 38 N. E. 311; in re Howe's Estate, 112 N.

Y. 103, 19 N. E. 513, 2 L. R. A. 825; in re Cagers' Will, 111 N. Y. 443, 18 N. E. 866. In the case at bar the exemption in the first section of the act should be allowed each legacy; and, as held by the court below and said in State v. Switzler, 143 Mo. 287, 45 S. W. 245, 40 L. R. A. 288, 65 Am. St. Rep. 669: "Where it is that the tax is upon the succession, it is computed, not on the aggregate valuation of the whole estate of the decedent considered as the unit for taxation, but on the value of the separate units into which it is divided. * * *"

We do not find that the cases of Schuster v. City of Louisville, 89 S. W. 689, 28 Ky. Law Rep. 588, and Hager, Auditor, v. Walker, 107 S. W. 254, 32 Ky. Law Rep. 748, 128 Ky. 1, militate against the conclusions expressed in this opinion. In the Schuster case the court had under consideration the amendment to the Constitution providing a system of assessment of personal property differing from the ad valorem system provided by section 171, and held, in substance, that it was not the object of the amendment to allow any exemption of personal property from taxation imposed upon all property uniformly by section 171, and, further, that the amendment, in authorizing a different mode of assessment of personal property from that theretofore provided for, did not, either expressly or by implication, permit a disregard of the rule imposed by section 171 requiring uniformity in taxes upon all property. In the case of Hager, Auditor, v. Walker, it was held by the court that a certain section of the revenue act of 1906 imposing a license tax upon agents of real estate was invalid, because it graded the license according to the class of the city in which the licensee lived, exempting altogether real estate agents residing outside of an incorporated city.

The license tax was declared valid, not because it lacked uniformity, but upon the ground of unreasonable and unconstitutional discrimination between citizens, based upon no valid reason, and because the tax was not imposed by ''general law,'' as required by the Constitution. The court, however, expressly held that the provision in section 171 of the Constitution requiring that the tax rate upon property be uniform does not directly and specifically apply to license taxes authorized by section 181 of the Constitution. The act was obnoxious to the Constitution because, in imposing a license tax upon a particular occupation, it attempted to exempt from its provisions and burdens certain persons engaged in the occupation for no other reason than that they did not live in incorporated cities. The exemption was manifestly an unreasonable discrimination against the persons taxed, and in violation of section 3 of the Bill of Rights, which declares that ''no grant of exclusive separate, public emoluments, or privilege shall be made to any man or set of men, except in consideration of public service.''

It follows from what we have said that in our opinion the act imposing the inheritance tax is not unconstitutional or otherwise invalid. Therefore it is not our province to question the policy of the Legislature in enacting it, or to refuse to sanction its enforcement.

Wherefore the judgment is affirmed.